```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

CARINDA RAFTERY, Individually
and as Personal Representative   :
of the Estate of Dennis Raftery,
et al.                           :

     v.                          :   Civil Action No. DKC 19-0867

                                 :
THE AMERICAN NATIONAL RED CROSS
and THE JOHNS HOPKINS HOSPITAL   :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this medical malpractice action are the motion for summary judgment by Defendant The American National Red Cross ("Red Cross") (ECF No. 47), and the motion and corrected motions for summary judgment by The Johns Hopkins Hospital ("Johns Hopkins") (ECF Nos. 51 and 53).  The court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, both motions for summary judgment will be granted and judgment will be entered in favor of Defendants.

**I.  Background**

Dennis Raftery ("Decedent") was a resident of Baltimore City, Maryland.  On February 15, 2016, he was given a blood transfusion at Johns Hopkins.  Testing of the blood by Red Cross, prior to its transportation to the hospital, did not uncover E. coli contamination.  It is undisputed, however, that soon after the transfusion, Mr. Raftery developed symptoms of sepsis.  Paul Ness, M.D., Corporate Designee of Johns Hopkins, reports that after Mr.

Raftery's adverse reaction, the bag was re-tested and found to have "a positive gram strain and cultured E.Coli." (ECF No. 53-2, at 4). Mr. Raftery died around six weeks later.

On February 8, 2019, Carinda Raftery, individually and as personal representative of the estate of Decedent, brought suit in the Circuit Court for Baltimore City against Red Cross. She alleged two survival actions: 1) Negligence, and 2) "Res-Ipsa", as well as 3) a wrongful death action in her personal capacity, arguing that Red Cross was negligent in the handling, storage and testing of the blood. (ECF No. 2). On March 22, 2019, Red Cross filed a notice of removal, asserting that its charter provides a basis for original federal jurisdiction over suits in which it is involved. (ECF No. 1) (citing *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247 (1992)).[1] On March 26, 2019, Red Cross filed a motion to consolidate its case with the pending federal case between Ms. Raftery and Johns Hopkins citing "common questions of law and fact" in that the cases involve the same incident and alleged virtually identical claims. (ECF No. 7-1). On April 19, 2019, the motion to consolidate cases was granted and Johns Hopkins was added as a named Defendant.

---

[1] An amended complaint was filed in state court just before removal, adding additional named plaintiffs Marion Raftery, Dennis M. Raftery, III, Iaian Thomas Raftery and Carinda Analicia Raftery, to the wrongful death action. (ECF No. 9).

2

On April 25, 2019, after both Defendants had filed their answers (ECF Nos. 14 and 15), a scheduling order was issued setting the discovery deadline as September 9, 2019, and the dispositive motions deadline as October 7, 2019.  After various discovery disputes emerged and the parties were granted extensions of time, the matter was referred to Magistrate Judge Coulson.  (ECF No. 30).  Plaintiffs' counsel took three discovery depositions during this time: 1) The corporate designee of Red Cross, 2) the corporate designee of Johns Hopkins, and 3) Patricia Brunker, M.D. who was the head of Red Cross' investigation into the blood contamination. Plaintiffs were required to file their certificate of qualified expert within 60 days of the completion of those depositions. (ECF No. 24).

Not long after these depositions took place, however, Plaintiffs' counsel filed a motion to withdraw on November 25, 2019. (ECF No. 39). On December 12, 2019, withdrawal was granted in part:  the appearances of Aaron L. Moore and Paul D. Bekman were stricken as counsel for Plaintiffs in their individual capacities, and resolution of counsels' request to withdraw as to Decedent's estate was deferred for thirty days as per Local Rule 101.2. (ECF No. 40).  That same day a letter went out to Plaintiffs that the failure to secure alternate representation meant that they would be acting *pro se*. (ECF No. 41). On January 30, 2020, Plaintiffs' counsel's motion for withdrawal as counsel of the

3

estate was granted, and a show cause order was issued to the estate giving it twenty days to show why its claims should not be dismissed. (ECF No. 42).  Ultimately, the estate's claims were dismissed on March 5, 2020.  (ECF No. 46).

On June 18, 2020, Red Cross moved for summary judgment on the sole remaining wrongful death count,[3] citing a lack of evidence "in the form of testimony by a qualified expert or otherwise, to establish that Red Cross violated any standard owed to [] Decedent" or such evidence proving his "injuries and death were caused by any action or inaction by Red Cross." (ECF No. 49).  That day a notice was mailed to Plaintiffs alerting them of the right to file a response within twenty-eight days of the notice and warning that a failure to file a timely response or to respond adequately could result in the dismissal of the case.  (ECF 50).  On September 2, 2020, a motion for summary judgment was filed by Johns Hopkins, similarly arguing that "Plaintiff has not met her burden of establishing negligence on the part of Johns Hopkins and has not established through any admissible testimony a causal link between any action or inaction of Johns Hopkins and the injury or death of Mr. Raftery."  (ECF No. 51-1, at 5).  The next day another notice

---

[3] As Red Cross explains, the prior dismissal of the Estate's survival action claims (Counts I and II) on March 5 left only Ms. Raftery's wrongful death claim (Count III), founded on the same general allegations of negligence as the first two counts.  (ECF No. 49-1, at 2) (citing ECF No. 46).

4

was sent to Plaintiff, and Johns Hopkins filed a "Corrected" motion for summary judgment, attaching the deposition of Dr. Paul Ness (seemingly left out of the prior motion in error).  (ECF No. 53).

**II.  Standard of Review**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to

preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

In Maryland, and as is universally true, "[b]ecause the gravamen of a medical malpractice action is the defendant's use of suitable professional skill, which is generally a topic calling for expert testimony, this Court [the Maryland Court of Appeals] has repeatedly recognized that expert testimony is required to establish negligence and causation." *Rodriguez v. Clarke*, 400 Md. 39, 71, 926 A.2d 736, 755 (2007) (collecting Maryland cases) (internal quotation marks omitted).  Other courts in this district have further highlighted the importance of expert opinions on medical questions of causation. *See, e.g.*, *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2018 WL 3539819, at *49 (D.Md. July 23, 2018) ("where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts . . . proof of the cause must be made by such witnesses.") (quoting *Aventis Pasteur, Inc. v. Skevofilax*, 408-09, 914 A.2d 113, 115 (Md. 2007)).

**III. Analysis**

As noted in the procedural history, Plaintiffs' attorneys withdrew shortly after the depositions of corporate designees were taken, and Plaintiffs have not actively participated in this action since then.  They not only failed to engage in discovery but also

6

have filed no response to the pending motions. Upon review, both motions will be granted as Plaintiffs are unable to produce any expert testimony establishing that either Red Cross or Johns Hopkins violated the applicable standard of care in handling the "blood product." The question of causation, therefore, need not even be addressed. Johns Hopkins correctly explains why the sole expert testimony on the issue of either Defendant's alleged breach of a duty owed to Decedent is dispositive:

> The issues here are medically complex. Without medical testimony, a fact finder is not in a position to understand how blood donors are screened, how their blood is tested, how blood can become contaminated, how contaminants are detected, how blood should be stored, whether and how blood must be re-tested at a hospital prior to transfusion, and – most importantly here – to what extent Mr. Raftery, who had underlying leukemia (a blood disorder), was injured by the contaminated blood.
> The only medical testimony that has been offered in this case comes from Paul Ness, M.D., a hematologist and blood banking specialist involved with the investigation of the blood transfusion here, who testified that the blood product was contaminated with E. coli prior to being sent to Johns Hopkins, but the testing done at the Red Cross did not discover the infection because the concentration of bacteria in the blood sample was too weak to give a positive result. (Ex. A, Ness Dep. at 15-16[).] Dr. Ness had no criticisms of any of the collection or testing done by the Red Cross and acknowledged that contaminants often cannot be detected when they are in low concentration. (*Id.* at 16:18 – 17:2.)

(ECF No. 53-1, at 4). Similarly, Red Cross argues that, "the testimony offered explains Red Cross met the standard of care." (ECF No. 49-1, at 3). Both Red Cross and Johns Hopkins point to a lack of any expert evidence produced by Plaintiffs to the contrary. Plaintiffs have failed to carry their burden to establish that either Defendant violated the applicable standard of care as understood by the medical profession in this context or as a matter of law. Defendants' motions for summary judgment will be granted.

**IV. Conclusion**

For the foregoing reasons, the motions for summary judgement by Red Cross and Johns Hopkins will be granted. A separate order will follow.

                                          /s/
                              DEBORAH K. CHASANOW
                              United States District Judge